IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>PLAINTIFF,<br><br>v.<br><br>REYNOLDS SCOTT<br><br>DEFENDANT. | Criminal Action No.<br>1:16-CR-346-06-TWT |

**UNITED STATES' RESPONSE TO DEFENDANT'S
MOTION TO TERMINATE SUPERVISED RELEASE**

Comes now the United States of America, by its counsel, Byung J. Pak, United States Attorney for the Northern District of Georgia, and Cynthia B. Smith and Alana R. Black, Assistant United States Attorneys, and files this response in opposition to Defendant Scott's motion for early termination of supervised release. (Doc. 290.)

**Introduction and Summary of the Argument**

Defendant Scott's *pro se* motion for early termination of supervised release should be denied, for several compelling reasons. Like many fraud defendants seeking early termination, Defendant has a large outstanding restitution balance. In his case, the outstanding balance is over $1.5 million, all actual losses to the

1

United States Treasury directly linked to his own conduct.

However, Defendant Scott is very unusual among fraud defendants, **because he has – and has had, for years – significant assets available to him from which he *could* pay his restitution judgment**. Many years ago, Defendant Scott and his close friend and co-defendant, Calvin Williams, bought two residential units in a three-unit co-op building located in Brooklyn, New York. Defendant has paid down the mortgage on his unit over the years, the property has appreciated, and the Government believes his equity in it to now be approximately $500,000.00. Defendant doesn't live in the unit, instead maintaining his home in Atlanta and holding the unit as rental property. Thus, the unit is simply an asset available to Defendant to satisfy his restitution order.

Despite consenting to the restitution order he received as part of his plea agreement, Defendant has taken various actions over the years, including filing meritless motions and pleadings, to resist liquidating the unit to pay his debt. *See* Docs. 230, 231, 240. Additionally, as outlined below, Defendant agreed to cooperate in the sale of the property, but has delayed this process several times.

While the Government does have various tools available to it to collect restitution debts, the Brooklyn, N.Y. unit poses unusual and difficult challenges because it is a cooperatively owned property. Defendant Scott and his lifelong

friend and co-defendant, Calvin Williams, together own a controlling 2/3 interest in the co-op, a fact that seriously complicates non-consensual collection efforts. Because of this problem, the Government has continued to pursue consent-based, negotiation-based approaches to liquidating the unit even after negotiations became extremely protracted.

In 2018, frustrated by its lack of progress and by Defendant Scott's seeming reluctance to liquidate the unit, the Government served a target letter on him, asking the Court to appoint an attorney to represent him in the negotiations. As the target letter explained, the Government was considering seeking a resentencing, pursuant to 18 U.S.C. § 3614, because of Defendant Scott's continued noncompliance with his restitution obligation. The Court appointed counsel from the Federal Defender's Office to represent Defendant Scott, and that office continues to represent him to this day.

Through defense counsel, the Government has now negotiated two separate agreements with Defendant in which he has agreed to cooperate in selling the unit and to pay 50% of the gross proceeds from the sale to the restitution balance. Nevertheless, while the second agreement was pending---but before the sale of the property was consummated-- Defendant filed the instant *pro se* motion, which omits any mention of the negotiations over the Brooklyn, N.Y. unit, as

3

well as his own role in delaying the sale.

In fact, on May 1, 2020, a week before Defendant filed this motion on May 8, 2020, he entered into a real estate contract for the sale of the Brooklyn property. According to the real estate agent involved in the transaction, the closing is expected to occur within the next month. It is impossible to know Defendant's intent in filing the instant motion, but the Government finds the timing unsettling. To terminate supervised release at this critical juncture could jeopardize the Government's continued efforts to obtain restitution payments from the sale of this property.

Title 18, United States Code, Section 3613A gives the Court certain powers to remedy ongoing restitution defaults. Among other remedies, that statute allows the Court to revoke supervised release, modify the terms of supervised release, resentence the defendant to any punishment that had been authorized at the time of his original sentencing, hold the defendant in contempt of court, enter a restraining order or injunction, and/or order the sale of property of the defendant, *inter alia.* 18 U.S.C. §3613A. The Government is not asking the Court for relief under this section at the present time, trusting that Defendant is acting in good faith and that the promised closing is imminent. However, terminating supervised release at this juncture would be counterproductive. Moreover, if

there is additional delay and the closing does not take place as scheduled, the Government plans to take the next step and move the Court for relief under Section 3613A.

Additionally, because of the large amount of restitution Defendant owes, the United States Probation Office is opposed to the early termination of his supervised release.

Finally, Defendant does not point to any particular hardship or extraordinary circumstances that justifies early termination of his supervised release.

For all of these reasons, Defendant's motion should be denied.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Defendant was part of an income tax fraud conspiracy with Charlie Shivers III and others, which netted over $5 million in fraudulent refunds. In the PSR, the three checks from which Defendant received proceeds were identified as follows: 1) Shipping Avenues, Inc., issued 9/27/2011 for $505,399, resulting in a loss of $505,399 to the IRS; 2) Transportation and Distributing Consultants, issued 1/10/2012 for $538,452, resulting in a loss of $538,452 to the IRS; and 3) Al Banks Transportation, Inc., issued 4/13/2011 for $505,399, resulting in a loss of $505,399 to the IRS.   PSR at ¶¶ 41, 46, 47.   The sum of the 3 fraudulently obtained checks from which Defendant admitted receiving proceeds was $1,549,250, which was

the restitution amount he stipulated to in the plea agreement. [Doc. 90.]

On December 20, 2016, Defendant entered a guilty plea to one count of conspiracy to defraud the government. [Doc. 90-1.] At the sentencing on August 2, 2017, he was sentenced to 4 months of imprisonment and ordered to pay $1,549,250 in restitution; the judgment specified that the monetary penalties were due immediately. [Doc. 194.] The judgment also provided for a three year term of supervised release, this period began on or about January 17, 2018. [Doc. 194].

In an effort to collect on the outstanding balance, as stated above, the government learned that Defendant owns shares of a building owned by the 279 Cumberland Housing Cooperative; the address for Defendant's interest is 279 Cumberland St., Apt. #1, Brooklyn, N.Y. ("the property").  *See* Exhibit 1, Declaration of Contract Paralegal Kyilla Jones, ¶ 4.  Accordingly, on September 22, 2017, the government filed an Application for Writ of Garnishment on all the shares which Defendant owns related to this Brooklyn, N. Y. apartment. [Doc. 211.]   It is uncontroverted that this Brooklyn property is residential rental property that the Defendant owns as an investment and does not personally use as a home. Defendant filed two separate requests for a hearing on the writ of execution, which this Court denied on January 31, 2018. [Docs. 219; 230; 247.]

Meanwhile, in August 2018, to maximize the return on the property and to

expedite the sale of the cooperatively-owned unit, the government entered into the first agreement with Defendant to sell the Brooklyn property. Exh. 1, ¶ 5. Under the terms of the agreement, Defendant Scott agreed that 50% of the gross proceeds from the sale of the property shares would be paid towards his outstanding restitution balance in this case. Exh. 1, ¶ 6.  In the fall of 2018, Defendant Scott entered into an agreement with a real estate professional to sell the property.  Exh. 1, ¶ 7.  The contract with that real estate agent ended in July 2019, with no sales contract for the property.  Exh. 1, ¶ 8.

On July 22, 2019, counsel for the government informed defense counsel that Defendant Scott had breached the agreement to sell the property.  Exh. 1, ¶ 9. Specifically, the government concluded that Defendant had failed to comply with the agreement's requirement that he make a good faith effort to cooperate in the property sale and, according to the real estate agent, Defendant had failed to allow reasonable access to the property to real estate professionals and prospective buyers. Exh. 1, ¶ 9.

In September 2019, Defendant entered into a new agreement with the government to sell the property.  The terms of this agreement also provided that 50% of the gross proceeds from the sale of the property shares would be paid towards Defendant's outstanding restitution balance. Exh. 1, ¶ 10. Defendant

subsequently arranged to have a different real estate professional assist in the effort to sell the property. Exh. 1, ¶ 10.   On May 1, 2020, Defendant entered into a contract for the sale of the property for $715,000.00.   Exh. 1, ¶11. Despite the pending contract, the closing on the property has not yet taken place. Exh. 1, ¶12. Counsel for the government has been informed that the closing will probably take place soon---possibly within the next 14 days.

On May 8, 2020, Defendant filed the instant motion for early termination of supervised release. [Doc. 290.] As stated above, the U.S. Probation Office has informed the government that it is opposed to early termination because of the large amount of outstanding restitution. Records from the U. S. Attorney's Office show that, with interest, Defendant's current outstanding restitution balance is $1,597,580.37.   Exh. 1, ¶3.

## II.   LEGAL AUTHORITY

Section 3583 of Title 18 governs the early termination of supervised release. In relevant part, 18 U.S.C. § 3583(e)(1) provides:

> The court may, after considering the factors set forth in section 3553(a) . . . terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.

"District courts in the Eleventh Circuit have stated that 'early termination of a period of supervised release is only occasionally justified, such as when a defendant exhibits exceptionally good behavior.'" *United States v. Gladden*, No. 1:12-CR-334–WSD, 2015 WL 6506306, at *2 (N.D. Ga. Oct. 26, 2015) (quoting *United States v. West*, No. 5:00–CR–23(HL), 2011 WL 1458723, at *1 (M.D. Ga. Apr. 15, 2011)). But when a defendant "simply complie[s] with the terms of [his] supervision," he does not exhibit "the type of exceptional behavior that warrant[s] early termination, because full compliance is expected of every person serving a term of supervised release." *West*, 2011 WL 1458723, at *1. Judged by these principles, Defendant's motion for early termination of supervised release should be denied.

First, when the Court originally imposed a three-year term of supervised release, it did so after considering the factors set forth in 18 U.S.C. § 3553(a). The § 3553(a) factors—including the seriousness of the offense, the history and characteristics of the defendant, and the need to promote respect for the law, to punish the offense, to protect the public, and to provide restitution to the victim—supported the Court's three-year supervised release sentence. The same factors now support denying the motion for early termination. *See United States v. Bastien*, 111 F. Supp. 3d 315, 322 (E.D.N.Y. 2015) ("Moreover, given the serious

nature of defendant's underlying criminal conduct, the Court concludes that supervised release continues to be necessary to ensure that he does not return to any criminal activity.")

Here, the outstanding balance on Defendant's restitution debt is currently more than $1.5 million and, importantly, despite entering into an agreement with the government in August 2018 to sell his Brooklyn property, the sale of this property has still not gone through. Continued supervision is necessary to ensure that the May 2020 contract results in a sale of the property with 50% of the gross proceeds going towards the restitution balance.

Defendant argues that this Court should assume that he will continue to make payments towards this outstanding debt and that he does not need the threat of revocation in order to continue.   [Doc. 290-7.]   But, despite Defendant's assertion that supervision is not necessary to ensure his restitution payments, the prolonged negotiations and protracted communications regarding the property sale indicate otherwise.

In fact, the outstanding restitution amount alone supports the denial of Defendant's motion. *See United States v. Bayard*, 537 F. App'x 41, 42-43 (3d Cir. 2013) (unpublished) (affirming District Court's decision that "it would not be in the interest of justice to terminate Bayard's supervised release now because he

still owes $4,000 in restitution"); *United States v. Oak*, 398 F. App'x 274, 275 (9th Cir. 2010) (unpublished) (affirming District Court's denial of early termination of supervised release based on "the finding that Oak still owes more than $200,000 in restitution"); *see also* 18 U.S.C. § 3553(a)(7) (listing "the need to provide restitution to any victims of the offense" as relevant factor to consider). Because the Defendant's crime was a financial one, the "interest of justice" referenced in 18 U.S.C. § 3583(e) (1), is served by denying this instant motion.

Finally, Defendant's mere compliance with terms of his supervised release does not warrant early termination. "Full compliance, after all, is merely what is expected of all people serving terms of supervised release." *Karacsonyi v. United States*, 152 F.3d 918, 1998 WL 401273, at *1 (2d Cir. 1998) (unpublished); *see United States v. Weintraub*, 371 F. Supp. 2d 164, 167 (D. Conn. 2005) (noting that although "ongoing and full compliance with all conditions of supervised release, including payment of the fine and restitution, is commendable, in the end that is what is required of all criminal defendants and is not a basis for early termination"). Again, paying restitution for a financial crime is part of the "full compliance" with terms of supervised release.

Defendant has failed to demonstrate the existence of any "exceptionally good behavior" to justify the termination of his supervised release. *See United States v.*

*Atkin*, 38 F. App'x 196, 198 (6th Cir. 2002) (unpublished) ("Early termination . . . is only warranted in cases where the defendant shows changed circumstances—such as exceptionally good behavior"); *United States v. Reisner*, No. 4:06-CR-077-SPM, 2008 WL 3896010, at *1 (N.D. Fla. Aug. 20, 2008) (stating that "'early termination is not warranted as a matter of course; on the contrary, it is only occasionally justified due to changed circumstances of a defendant, such as exceptionally good behavior'"). *See also United States v. Boyd*, 606 F. App'x 953, 961 (11th Cir. 2015) (unpublished).

## Conclusion

For the reasons set forth above, the United States respectfully requests that the Court deny Defendant's motion for ealy termination of his supervised release.

Respectfully Submitted,

BYUNG J. PAK
UNITED STATES ATTORNEY

s/Cynthia B. Smith
CYNTHIA B. SMITH
ASSISTANT U.S. ATTORNEY
GA. BAR NUMBER 655473

s/Alana R. Black
ALANA R. BLACK
ASSISTANT U.S. ATTORNEY
GA. BAR NUMBER 785045
600 U.S. Courthouse
75 Ted Turner Dr. SW
Atlanta, GA 30303
(404) 581-6000

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Local Rules 5.1 and 7.1D, that the foregoing brief has been prepared using Book Antiqua, 13 point font.

s/Cynthia B. Smith
CYNTHIA B. SMITH
Assistant United States Attorney

## CERTIFICATE OF SERVICE

The United States Attorney's Office served this document today by sending a copy by first class mail with sufficient postage to:

> Reynolds Scott III, Defendant, *pro se*
> 1213 Allene Ave. #112
> Atlanta, GA 30310

And also by filing through the ECF system, which will automatically serve a copy on Defendant's counsel of record.

This 28th day of July, 2020.

> s/Cynthia B. Smith
> CYNTHIA B. SMITH
> Assistant United States Attorney